**THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| TIMOTHY MOXLEY, et al., | ) | Case No. 2:21-cv-03838-MHW-EPD |
| | ) | |
| Plaintiffs, | ) | Judge Michael H. Watson |
| | ) | |
| v. | ) | Chief Magistrate Judge Elizabeth P. |
| | ) | Deavers |
| THE OHIO STATE UNIVERSITY, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**DEFENDANT THE OHIO STATE UNIVERSITY'S REPLY IN SUPPORT OF**
**MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT**

## I.      INTRODUCTION.

Plaintiffs here, all of whom are represented by the same counsel representing the plaintiffs in the *Snyder-Hill* case, have expressly admitted that the above-captioned case is "substantially related" to the *Snyder-Hill* case and that the Court's ruling on Ohio State's motion to dismiss in *Snyder-Hill* "significantly inform[s]" the outcome on Ohio State's motion to dismiss here. *See* Motion for Extension (Doc. 18) at 3. Plaintiffs are correct.

On September 22, 2021, the Court granted Ohio State's motions to dismiss in the *Garrett*, ***Snyder-Hill***, *Ratliff*, and *Nutter* cases, finding that the two-year statute of limitations barred the claims of the plaintiffs in those cases.[1] In regard to the *Snyder-Hill* case specifically, the Court stated that "[t]he reasons requiring dismissal in those cases [*Garrett*, *Ratliff*, and *Nutter*] apply equally to this case" and further found: "Here, the Second Amended Complaint provides all the information the Court needs to conclude that Plaintiffs' claims are barred by the statute of limitations." *Snyder-Hill* Opinion at 2. The same findings apply to, and are dispositive of, the

---

[1] *See Garrett*, Case No. 2:18-cv-00692 (Doc. 197); *Snyder-Hill*, Case No. 2:18-cv-00736 (Doc. 158) ("*Snyder-Hill* Opinion"); *Ratliff*, Case No. 2:19-cv-04746 (Doc. 39); *Nutter*, Case No. 2:19-cv-02462 (Doc. 53) (collectively, "*Garrett et al.* Opinions").

statute of limitations issue in the above-captioned action, as plaintiffs implicitly have admitted. Plaintiffs' claims here are time-barred and should be dismissed for the same reasons set forth in the *Garrett et al.* Opinions and below.[2]

Plaintiffs' opposition does not dispute that a two-year statute of limitations governs their Title IX claims. Plaintiffs also concede that dismissal of their claims based on the statute of limitations is appropriate where plaintiffs' complaint allegations show that the claim is time-barred. *See* Opp. at 11-12. A straightforward application of the standard principles governing claim accrual, as set out in the *Garrett et al*. Opinions, requires dismissal of plaintiffs' Title IX claims as barred by the statute of limitations.

## II. PLAINTIFFS' TITLE IX CLAIMS ARE BARRED BY THE TWO-YEAR STATUTE OF LIMITATIONS.

### A. Courts Routinely Dismiss Title IX Claims Based On The Statute Of Limitations.

Plaintiffs state that dismissal based on the statute of limitations bar is warranted if "the allegations in the complaint affirmatively show that the claim is time-barred." Opp. at 12 (quoting *Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 547 (6th Cir. 2012); *Walburn v. Lockheed Martin Util. Servs., Inc.*, 443 F. App'x 43, 47 (6th Cir. 2011)). Plaintiffs then wrongly quote *Cataldo*, *Walburn*, and *In re Arctic Express Inc.*, 636 F.3d 781, 803 (6th Cir. 2011) for the principles that "Rule 12(b)(6) is 'ordinarily an inappropriate vehicle for dismissing a claim based on the statute of limitations,'" and/or that "[w]hat a plaintiff knew or should have known 'is a question for the trier of fact.'" Opp. at 2, 12, 20, 24.

None of these cases assist plaintiffs, however. In both *Cataldo* and *Walburn*, the Sixth

---

[2] Contrary to plaintiffs' representations to the Court that they needed additional time to respond to Ohio State's motion to dismiss in order to address the Court's *Garrett et al*. Opinions, *see* Motion (Doc. 18) at 3, plaintiffs' opposition to Ohio State's motion to dismiss does not cite or discuss the Court's *Garrett et al*. Opinions.

Circuit *affirmed* Rule 12(b)(6) *dismissals* based on the applicable statute of limitations, and the Sixth Circuit in *In re Arctic* did *not* address a Rule 12(b)(6) motion to dismiss.

Consistent with *Cataldo* and *Walburn*, this Court found in the *Garrett et al*. Opinions that, "statute-of-limitations defenses may be properly raised in a Rule 12(b)(6) motion" and "[d]ismissal under Fed. R. Civ. P. 12(b)(6) based on a statute-of-limitations bar is appropriate when the complaint shows conclusively on its face that the action is indeed time-barred." *Garrett*, Opinion (Doc. 197) ("*Garrett* Opinion") at 6-7; *Snyder-Hill*, Opinion (Doc. 158) ("*Snyder-Hill* Opinion") at 2.  This Court also cited numerous decisions in which courts have dismissed ***Title IX*** claims pursuant to Rule 12(b)(6) or Rule 12(c) because the pleadings, like plaintiffs' Amended Complaint here, affirmatively demonstrated that the Title IX claims were time-barred.  *See Garrett* Opinion at 11-15.  All apply here, and plaintiffs cannot avoid them.

## B.     The Discovery Rule Does Not Apply.

In support of their position that the discovery rule applies, plaintiffs state that "what *Rotkiske* has to do with this case is a mystery."  Opp. at 15.  Contrary to plaintiffs' characterization of *Rotkiske v. Klemm*, 140 S. Ct. 355 (2019), however, this Court stated in the *Garrett et al.* Opinions: "There is good reason to think the Sixth Circuit might not adopt the discovery rule in Title IX cases" in light of *Rotkiske*.  *Garrett* Opinion at 8.  This Court found it "need not definitively decide the issue either, though, as Plaintiffs' claim is untimely under ***both*** [the occurrence and discovery] rules." *Garrett* Opinion at 8, 10 (emphasis added).

Plaintiffs also argue that *Rotkiske* is "inapposite" because it was a "plain language case," which held that the discovery rule did not apply to the Fair Debt Collection Practices Act's ("FDCPA") statute of limitations requiring claims to be filed "within one year from the date on which *the violation* occurs" and does not apply to Title IX, which "does not define accrual at all."

Opp. at 15 (emphasis in original). Plaintiffs are wrong for at least four reasons:

(1) In the *Garrett et al.* Opinions, this Court stated: "Despite that factual difference [between the FDCPA and Title IX], the Supreme Court's analysis in *Rotkiske* is helpful because it assumed that the 'standard rule [is] that the limitations period commences when the plaintiff has a complete and present cause of action' and that Congress legislates against that standard rule." *Garrett* Opinion at 8.

(2) The *Rotkiske* Court's 8-1 opinion gave no indication that its criticism of the discovery rule was confined to the FDCPA or statutes expressly defining when claims accrue, and broadly characterized the discovery rule as a "bad wine of recent vintage." *Rotkiske*, 140 S. Ct. at 361.

(3) Plaintiffs do not dispute that neither the Supreme Court nor the Sixth Circuit has ever held that the discovery rule applies to claim accrual under Title IX. *See Forrester v. Clarenceville Sch. Dist.*, No. 20-12727, 2021 WL 1812700, at *4 (stating "[t]he Supreme Court has repeatedly refused to interpose the 'discovery rule' to accrual standards for federal claims. . . . The Supreme Court in *TRW Inc. v. Andrews* noted that while many federal courts 'apply a discovery accrual rule when a statute is silent on the issue,' the Court 'has not adopted that position as [its] own.'").

(4) Ohio's two-year personal injury statute of limitations, from which both Title IX and Section 1983 borrow, requires that an action be brought within a period of years after the cause of action "accrues." *See Everly v. Everly*, 958 F.3d 442, 460-461 (6th Cir. 2020) (quoting 17 U.S.C. § 507(b)); *Sykes v. United States*, 507 F. App'x 455, 462 (6th Cir. 2012); OHIO REV. CODE § 2305.10(A). The Supreme Court has "repeatedly said" that "the plain meaning of 'accrue' triggers the occurrence rule," in which the statute of limitations begins to run when a violation of the plaintiff's legal right has occurred, not later when the plaintiff "discovers" or should have discovered the cause of action. *See Everly*, 958 F.3d at 460, 462 (citing *Gabelli v. S.E.C.*, 568 U.S. 442, 448 (2013); *U.S. v. Lindsay*, 346 U.S. 568, 569 (1954); *Fisher v. Whiton*, 317 U.S. 217, 221 (1942)).

**C.      Plaintiffs Pled They Were Aware Or Suspicious That The Claimed Acts Were Abusive At The Time They Occurred.**

Even applying the discovery rule, plaintiffs' Title IX claims are time-barred. As this Court found in the *Garrett et al*. Opinions, "Plaintiffs' claim is untimely under both [the occurrence and discovery] rules" because "the accrual date is the same under either rule"—when each was last abused by Strauss, dropped out of Ohio State, or graduated. *Garrett* Opinion at 10-11, 15. Thus, the Court concluded that "Plaintiffs' Title IX claims are barred by the statute of limitations, even

4

under the discovery rule." *Id*. at 15.

Plaintiffs do not dispute the discovery rule principles set forth in the *Garrett et al*. Opinions or in Ohio State's motion to dismiss.  *See Garrett* Opinion at 12-15; MTD (Doc. 17) at 16-18. Based on those principles, plaintiffs' various arguments that they did not know, or should not have known had they exercised reasonable diligence, that Strauss abused them until the Perkins Coie investigation was announced in 2018 lack merit. *See* Opp. at 3-6, 24-29.

First, as in *Snyder-Hill*, plaintiffs here rely upon an appendix attached to their opposition brief which purports to set forth allegations that demonstrate plaintiffs' "lack of awareness that it was abuse." Opp. at Appendix. Just like the appendix in *Snyder-Hill*, however, plaintiffs' appendix not only omits the numerous additional allegations set out in plaintiffs' Amended Complaint that affirmatively establish each plaintiff's awareness of the alleged abuse and harm he suffered, *see* MTD (Doc. 17) at 9-15, 18-19 (summarizing plaintiffs' allegations), but the selective allegations plaintiffs themselves set out in the appendix also affirmatively establish that a reasonable person would, ***at a minimum***, have been suspicious of possible abuse, thereby triggering his duty to investigate and protect his rights.[3]  *See* Pls' Appendix (quoting allegations from numerous plaintiffs that Strauss' conduct made them feel "uncomfortable," "embarrassed," "ashamed," and/or "confused"; Strauss's conduct was "strange," "disgusting and creepy," "weird," "pervert[ed]," and "freaky"; Strauss had a "frequent and obvious presence" in the locker room and "linger[ed] in the showers" for the specific purpose of "watching the students in states of undress"; plaintiffs felt so uncomfortable that they terminated their exams with Strauss on the spot and/or subsequently avoided Strauss; plaintiffs and their teammates complained about Strauss or

---

[3] By way of example only, it is not plausible for a plaintiff alleging that Strauss instructed him to masturbate to ejaculation and clean up the semen on the floor or a plaintiff alleging he observed Strauss having sex with athletes and trying to have sex with the plaintiff to now claim they were not aware of possible abuse by Strauss. Amended Complaint (Doc. 16) at ¶¶ 300, 392-398.

expressed concerns to others about him; and plaintiffs and their teammates gave numerous sexual nicknames to Strauss and/or made sexual references to his conduct (e.g., pretending to smoke a cigarette after exiting from a Strauss exam)).[4]

Second, while plaintiffs assert that Ohio State "ignores hundreds of allegations in the complaint, and construes what allegations it does address in the light most favorable to itself," *see* Opp. at 3, plaintiffs do not dispute that Ohio State's motion to dismiss is based solely on the extensive and detailed allegations in plaintiffs' 159-page, 936-paragraph Amended Complaint. The Court's conclusion in *Snyder-Hill* that "the Second Amended complaint provides all the information the Court needs to conclude that Plaintiffs' claims are barred by the statute of limitations" also applies to plaintiffs' Amended Complaint here. *Snyder-Hill* Opinion at 2.

Third, plaintiffs' argument that their complaint allegations must be "taken as true, not false," does not render their Title IX claims timely. Opp. at 3. As the Court stated in its *Garrett et al.* Opinions, the Supreme Court's decisions in *Iqbal* and *Twombly* require plaintiffs to allege that the timeliness of their Title IX claims is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 678 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 570 (2009). Whether the plaintiffs have done so is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 550 U.S. at 679. "[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Mezibov v. Allen*, 411 F.3d 712, 716 (6th Cir. 2005). The Court also "need not accept conclusory allegations or indulge in unreasonable inferences." *HMS Prop. Mgmt. Grp., Inc. v. Miller*, 69 F.3d

---

[4] Plaintiffs also do not dispute that they are suing based only on certain specific interactions with Strauss, and are not claiming that every encounter with Strauss was abusive. *See* MTD (Doc. 17) at 19. Given this admission, plaintiffs' argument that they were unable to distinguish between conduct that was abusive and conduct that was not is implausible.

537, at *3 (6th Cir. 1995).  Plaintiffs' contention that they did not know Strauss' conduct was abusive at the time is based solely on unsupported conclusory allegations and argument that are directly contradicted by plaintiffs' own factual allegations in their Amended Complaint affirmatively establishing their awareness of the abuse and harm at the time it occurred.

Fourth, plaintiffs' reliance upon statements by second-handed sources, such as Perkins Coie and/or former Ohio State physicians, that sexual abuse victims "often" face "confusion as to whether sexual abuse, in fact, occurred" and that Perkins Coie consulted with medical experts to determine whether Strauss' conduct was appropriate or medically necessary do not establish that plaintiffs were unaware or lacked suspicion that Strauss' conduct was abusive at the time it occurred. Opp. at 2, 5, 7, 24.  In fact, this Court rejected the same argument in the *Garrett et al.* Opinions, stating:

> The Complaint is replete with allegations that Plaintiffs were concerned by Strauss' abuse and felt violated by it, discussed the abuse with teammates, classmates, or family members, reported the abuse themselves, or that the abuse caused them immediate mental and emotional distress.  All of these allegations directly undercut the notion that Plaintiffs were "not aware that Strauss's conduct was not medically necessary and that it was, in fact sexual assault" until the Perkins Coie report was published.  Unfortunately, the very effect the abuse had on Plaintiffs (i.e., that it was enough to deprive them of the educational opportunities or benefits from Ohio State) was sufficient to put them on at least inquiry notice that they suffered abuse and that the abuse might not have happened but for Ohio State's deliberate indifference.

*Garrett* Opinion at 18-19 n.7 (citations omitted).[5]  The Court applied this same reasoning in dismissing the *Snyder-Hill* case. *See Snyder-Hill* Opinion at 2 ("[t]he reasons requiring dismissal in those cases apply equally to this case").  Plaintiffs here admit that the same reasoning should also apply to their claims. *See* Pls' Motion for Extension (Doc. 18) at 3 (stating this case is

---

[5] Plaintiffs admit that "Strauss made a number of students uncomfortable," but argue, "discomfort hardly equals knowledge of sexual abuse." Opp. at 26.  Plaintiffs' argument, however, does not save their Title IX claims from dismissal because plaintiffs do not dispute that mere suspicion, not knowledge in fact, of possible sexual abuse triggers the running of the limitations period under the discovery rule. *See* MTD (Doc. 17) at 17-18.

"substantially related" to the *Snyder-Hill* case and that the Court's ruling on Ohio State's motion to dismiss in *Snyder-Hill* "significantly inform[s]" the outcome on Ohio State's motion to dismiss here). Consistent with this Court's reasoning in the *Garrett et al.* Opinions, the Supreme Court has advised that a plaintiff who is unsure (or, in the words of plaintiffs and Perkins Coie, has "confusion") about whether conduct by a government physician constitutes a tort against him:

> can protect himself by seeking advice in the medical and legal community. To excuse him from promptly doing so by postponing the accrual of his claim would undermine the purpose of the limitations statute, which is to require the reasonably diligent presentation of tort claims against the Government.

*United States v. Kubrick*, 444 U.S. 111, 123 (1979).

Fifth, plaintiffs conflate the Perkins Coie investigation and the testimony of second-hand sources—20 to 40 years after the conduct at issue—with the completely separate issue of claim accrual, which none of these sources addressed. The accrual question does not ask, as plaintiffs' incorrectly state, whether plaintiffs knew "as a matter of law" that Strauss sexually abused them. Opp. at 3, 26 n.19. The accrual question instead asks whether a reasonable person in each plaintiff's position discovered, or should have discovered, his injury had he exercised reasonable diligence. *See* MTD (Doc. 17) at 17. In addition, statements or testimony from second-hand sources does not alter each plaintiff's *own* factual allegations, which affirmatively demonstrate each plaintiff's awareness of the abuse and harm he suffered at the time.

Sixth, plaintiffs' assertion that their claims could not have accrued at the time of the abuse because Ohio State itself had to hire Perkins Coie "to evaluate *whether* the University had knowledge of such allegations against Strauss" further underscores why plaintiffs' claims are time-barred. Opp. at 21 (internal quotation marks omitted). The challenge to the current Ohio State administration and the Perkins Coie investigators in attempting to reconstruct what happened decades ago highlights the primary purpose behind the statute of limitations bar. *See Am. Pipe &*

8

*Const. Co. v. Utah*, 414 U.S. 538, 554 (1974) (statutes of limitations are "designed to promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared"); *see also Gilley v. Dunaway*, 572 F. App'x 303, 308 (6th Cir. 2014) ("If the Board had been truly trying to conceal its knowledge from [plaintiff], ... it would not have conducted an investigation at all.").

Tellingly, plaintiffs do not cite any cases involving Title IX claims to support their position that they were unaware Strauss abused them at the time it occurred.  The only Sixth Circuit case plaintiffs cite is *Roberson v. Tennessee*, 399 F.3d 792 (6th Cir. 2005), which plaintiffs cite for the principle that "a student hyper-attuned to doctor-patient abuse is hardly, at the pleading stage, a 'typical lay person.'" Opp. at 28.  *Roberson*, however, did not address doctor-patient abuse (or any abuse at all), and the Sixth Circuit in *Roberson* affirmed the district court's **dismissal** of the plaintiff's Section 1983 claim as barred by the statute of limitations, finding that "a typical lay person would have recognized the need to take legal action earlier in the process." *Roberson*, 399 F.3d at 795.

Plaintiffs also rely upon four non-Title IX, out-of-circuit cases.  All four cases are inapposite. In none of the cases did any of the plaintiffs allege, as plaintiffs allege here, all of the following: extensive and detailed facts affirmatively demonstrating that plaintiffs believed their abuser's conduct was abusive and/or inappropriate at the time; widespread knowledge of the abuser's inappropriate conduct; widespread contemporaneous complaints about the abuser's conduct; and that the school's response or lack thereof to such knowledge and complaints was widely known.  In addition to the above distinguishing facts:

> (1) In *Doe v. Pasadena Hosp. Ass'n, Ltd*., No. 218CV08710ODWMAAX, 2020 WL 1244357 (C.D. Cal. Mar. 16, 2020), the court dismissed with prejudice the plaintiffs' sexual harassment claims based on the statute of limitations, stating that "Plaintiffs' argument that they could not have discovered [their gynecologist's] comments

constituted sexual harassment is implausible and the discovery rule does not toll their sexual harassment claim" because "the alleged facts confirm that Plaintiffs should have suspected wrongdoing" where the gynecologist "made 'arousal-type' sounds" and sexual comments during examinations. *Id*. at *5.

(2) *Simmons v. United States*, 805 F.2d 1363 (9th Cir. 1986) applied Washington law and held that accrual of the statute of limitations arising from an improper sexual relationship between a patient and her psychotherapist was delayed because the psychological phenomenon of "transference" prevented the plaintiff from understanding that the relationship had injured her. "*Simmons* has subsequently been criticized as a misapplication of Washington state law," *see Bodin v. Vagshenian*, 462 F.3d 481, 486 (5th Cir. 2006), and the Ninth Circuit itself later distinguished *Simmons* in holding that a plaintiff's tort claims arising from her therapist's rape of her were time-barred because "the transference phenomenon did not prevent [the plaintiff] from recognizing she had been harmed by her counselor at the time" of the rape (even though she did not know the "full extent" of the emotional impact until later). *Mansfield v. Watson*, 990 F.2d 1258, *3 (9th Cir. 1993).[6] Here, plaintiffs do not assert that the transference phenomenon was implicated in their dealings with Strauss (who was not a psychotherapist), and their complaint allegations affirmatively demonstrate they were aware or suspicious of the abuse and injury at the time it occurred.

(3) *Torres v. Sugar-Salem Sch. Dist. # 322*, No. 4:17-CV-00178-DCN, 2019 WL 4784598 (D. Idaho Sept. 30, 2019) applied Idaho law and is similar to *Simmons* in finding that transference and the fact the plaintiff was a minor when she began a sexual relationship with her high school counselor created a question of fact on summary judgment as to whether the plaintiffs' tort claims were barred by the statute of limitations. *Id*. at *13-14. *Torres* is therefore distinguishable for the same reasons as *Simmons*.

(4) *Doe v. Cherwitz*, 518 N.W.2d 362, 364 (Iowa 1994) was a decision by the Iowa Supreme Court which delayed the accrual of claims arising from sexual abuse based on repressed memories and a statute of limitations which expressly required application of the discovery rule. Plaintiffs here do not claim that their memories of the alleged abuse by Strauss were repressed; do not cite any case in which a court has held that repressed memories can delay accrual of the statute of limitations for Title IX claims; and the discovery rule does not apply to Title IX, as previously discussed.

### D.     Plaintiffs Were Aware Of The Claimed Causal Connection Between The Alleged Abuse And Ohio State.

Plaintiffs assert that even if they were aware or suspicious that Strauss may have abused

---

[6] Other courts also have distinguished *Simmons*. *See, e.g., K.E.S. v. United States*, 38 F.3d 1027, 1030 (8th Cir. 1994) ("*Simmons* is distinguishable from this case, in which plaintiff testified that she knew Reilley's sex abuse caused her contemporaneous physical and emotional injury."); *Reed v. Barnes*, 986 F.2d 1428 (10th Cir. 1993) (distinguishing *Simmons* in case involving sexual relationship with physical therapist on grounds that "[t]his is also not a case where a psychotherapist abused his position by taking advantage of a transference phenomenon").

them, their Title IX claims did not accrue at the time of the abuse because "[n]ot one Plaintiff knew, should have known, or could have known that OSU's deliberate indifference to known, pervasive sexual abuse caused Dr. Strauss to abuse them" until the Perkins Coie investigation was announced in 2018. Opp. at 20-21. Again, plaintiffs are incorrect. This Court rejected the same argument in the *Garrett et al*. Opinions, stating:

> According to Plaintiffs, the "cause" here is Ohio State's deliberate indifference, so their claims did not accrue until they knew or should have known of their injuries and that those injuries were caused by Ohio State's deliberate indifference. . . . Plaintiffs' Title IX injury (deprivation of educational opportunities or benefits provided by Ohio State) was attributable to Strauss' abuse, and Plaintiffs knew both of the injury and its cause (the abuse), which was sufficient to put them at least on inquiry notice to determine whether injury would have occurred but for Ohio State's deliberate indifference. . . . Plaintiffs' argument that the statute of limitations did not begin to run until they learned of Ohio State's deliberate indifference via the Perkins Coie report is therefore incorrect as a matter of law.

*Garrett* Opinion at 16-19 (citations omitted). This Court also stated:

> Plaintiffs' argument that they had no reason to know of Ohio State's deliberate indifference until the announcement in 2018 of its internal investigation is also defeated by the factual allegations in their own Complaint. For example, Plaintiffs allege that Strauss's behavior was an open secret, that athletes would openly "joke" about his abuse, and that rumors of his abuse permeated Ohio State. Plaintiffs also knew that Strauss continued to be employed at Ohio State despite this widespread knowledge, which was enough to put them on inquiry notice of Ohio State's deliberate indifference to his horrific and predatory behavior.

*Garrett* Opinion at 19 n.8 (citations omitted). Plaintiffs here have made the same allegations, *see* MTD (Doc. 17) at 9-16 (summarizing plaintiffs' allegations), and their causation argument should be rejected for the same reasons set out in this Court's *Garrett et al.* Opinions.

In arguing that plaintiffs were unaware of Ohio State's alleged role in facilitating Strauss' abuse, plaintiffs rely upon the same arguments supporting their position that they did not know Strauss abused them—unsupported conclusory allegations, testimony from second-hand sources, and the previously quoted statements in the Perkins Coie report. *See* Opp. at 7-8, 20-24. Each of

these arguments fails for the reasons set out above in the *Garrett et al.* Opinions and for the additional reasons previously discussed above. *See* Section II.C., *supra*.

Plaintiffs do not dispute that, in the cases cited in Ohio State's motion to dismiss, the ruling courts expressly rejected the same arguments plaintiffs make here—that accrual of their Title IX claims had been delayed because the plaintiffs alleged they lacked information about the schools' roles in not preventing the claimed abuse or because the schools concealed it from plaintiffs. *See* MTD (Doc. 15) at 19-21 & n.20. In fact, dismissal is even more appropriate in *this* case because plaintiffs here—in contrast to plaintiffs in those other cases—allege widespread knowledge of the abuser's inappropriate conduct; widespread contemporaneous complaints about the conduct; and that the school's alleged indifference to such knowledge and complaints was widely known.

Given the well-established and consistent Title IX jurisprudence, it is not surprising that plaintiffs found no Title IX cases supporting their position. The cases plaintiffs do cite are district court opinions outside the Sixth Circuit, and involve the same operative facts and the same university, Baylor University; two cases involving the University of Idaho and the University of Alaska which relied on the *Baylor* cases; and a single case involving the University of California which also relied upon the *University of Idaho* and *University of Alaska* cases. *See* Opp. at 16-18. All of these cases actually support Ohio State's position that plaintiffs' claims are time-barred. Each case addressing Title IX claims alleging the schools were deliberately indifferent to plaintiffs' complaints of sexual assault (the "post-reporting" claims) held that such claims were **barred** by the respective two-year statutes of limitations. *See Doe 1 v. Baylor Univ.*, 240 F. Supp. 3d 646, 663-664 (W.D. Tex. 2017); *Lozano v. Baylor Univ.*, 408 F. Supp. 3d 861, 877, n.3 & n.5 (W.D. Tex. 2019); *Hernandez v. Baylor Univ.*, 274 F. Supp. 3d 602, 617-618 (W.D. Tex. 2017); *Jameson v. Univ. of Idaho*, 2019 WL 5606828, at *4 (D. Idaho Oct. 30, 2019); *Dutchuk v. Yesner*,

No. 3:19-CV-0136-HRH, 2020 WL 5752848, at *1-*2, *5 (D. Alaska Sept. 25, 2020).

In regard to the courts' refusal to dismiss the Title IX claims alleging that the schools' conduct increased plaintiffs' risks of being sexually assaulted (the so-called "heightened-risk" claims), this Court found in its *Garrett et al.* Opinions that: "Ohio State is correct that Plaintiffs have not cited any case law suggesting the Sixth Circuit recognizes a 'heightened risk' theory of Title IX deliberate indifference." *Garrett* Opinion at 22.  This Court also stated that "[e]ven if the Sixth Circuit recognizes a heightened risk theory of liability under Title IX, Plaintiffs' claims in this case are barred by the statute of limitations" because the underlying sexual abuse in the *Baylor*, *Univ. of Idaho*, *Univ. of Alaska*, and *Univ. of California* cases was either student-on-student (not employee-on-student) and/or plaintiffs pled that Strauss' conduct was "widely known":

> In cases where the heightened-risk claim is based on a university's deliberate indifference to prior complaints of student-on-student harassment, it makes sense that a plaintiff may have no reason to suspect the school's knowledge of, and deliberate indifference to, prior complaints until a subsequent investigation, admission, or news report breaks.
>
> Here, however, the perpetrator was an employee of Ohio State. Not only that, but plaintiffs' complaints makes clear that Strauss's abuse was widely known amongst both students and faculty.  This general knowledge is enough to have put Plaintiffs on notice that Ohio State may have receive complaints about Strauss in the past and yet continued employing him.  Accordingly, even if the Sixth Circuit recognizes a heightened risk theory of liability, Plaintiffs' claims are time-barred.

*Garrett* Opinion at 23.

This Courts' reasoning in the *Garrett et al*. Opinions is consistent with the Fifth Circuit, which subsequently abrogated the *Baylor* decisions in holding: "We have never recognized or adopted a Title IX theory of liability based on a general 'heightened risk' of sex discrimination, and we decline to do so." *Poloceno v. Dallas Indep. Sch. Dist*., No. 20-10098, 2020 WL 5494511, at *3 (5th Cir. Sept. 10, 2020).  Consistent with this Court's *Garrett et al*. Opinions, *Poloceno* also distinguished other courts' recognition of Title IX "heightened risk" claims on the ground that

such courts "limit this theory of liability to contexts in which students committed sexual assault on other students, circumstances not present here." *Id*.

As this Court and *Poloceno* make clear, it was critical that the underlying sexual abuse in the *Baylor, Univ. of Idaho*, and *Univ. of California* cases was student-on-student—not employee-on-student.  Had the abuse been employee-on-student, as plaintiffs allege here, even the judge deciding the *Baylor* cases expressly acknowledged he would have held the claims were time-barred:

> The Fifth Circuit [in *King-White*] concluded that the plaintiffs' Title IX claims accrued by the time the victim turned 18 because, even though the plaintiffs (the victim and her mother) did not know until later about certain school policies and prior complaints from other parents about the teacher, they knew the teacher was employed by the school, knew of the abuse, and knew the school had failed to stop the abuse—which, at the least, would have led a reasonable person to investigate further.
>
> Here, however, Plaintiff was sexually assaulted by another student. Unlike the plaintiffs in *King-White*, where the abuser was a school employee, Plaintiff therefore had no reason to suspect that Baylor's alleged deliberate indifference played a role in her assault.

*Hernandez*, 274 F.Supp.3d at 617 (citing *King-White v. Humble Ind. Sch. Dist.*, 803 F.3d 754, 762-763 (5th Cir. 2015)).

 The above reasoning also is consistent with the numerous Title IX cases cited in Ohio State's motion to dismiss holding that the statute of limitations accrues at the time of the abuse when a plaintiff is aware of the claimed acts, the abuser's identity, and that the abuser was an employee of the school. *See* MTD (Doc. 17) at 20 & n.20.

Additionally, unlike the plaintiffs in *Baylor*, *Univ. of Idaho, Univ. of Alaska*, and *Univ. of California* cases who had no reason to be suspicious of, or investigate, the universities' conduct in creating the heightened risk of sexual abuse until it was exposed by media coverage, an independent investigation was initiated, or a report was released, plaintiffs here expressly allege

widespread knowledge of Strauss' inappropriate conduct and of Ohio State's inadequate response to it.

The additional cases plaintiffs cite did not involve Title IX claims; were decided by courts outside the Sixth Circuit; pre-date *Rotkiske*; did not involve claims of sexual abuse; are inapposite; and/or have been criticized. *See*, *e.g.*, Opp. at 16-19 (citing *See Doe v. Bd. of Educ. of Hononegah Cmty. High Sch. Dist.*, No. 207, 833 F. Supp. 1366 (N.D. Ill. 1993); *Sowers v. Bradford Area Sch. Dist.*, 694 F. Supp. 125 (W.D. Pa. 1988); *Armstrong v. Lamy*, 938 F. Supp. 1018 (D. Mass. 1996)).

In *Doe v. USC*, for example, the court criticized *Hononegah*, which relied upon *Sowers*, *see* 833 F. Supp. at 1376 n.9, and was cited in *Armstrong*, *see* 938 F.Supp. at 1033. *See Doe v. USC*, 2019 WL 4229750, at *4 n.2. (stating "the Court finds [*Hononegah*] to be poorly reasoned by failing to focus on the plaintiff's knowledge of her *injury* resulting from the alleged constitutional violation, which was the alleged abuse by the teacher employed by the defendant. . . . Plaintiff's awareness of her injury at the time of her examination is sufficient for the statute of limitations period to run following the examination."). Additionally, in none of the cases cited by plaintiffs did the plaintiffs allege, as plaintiffs allege here, widespread knowledge of the abuser's inappropriate conduct and of the government entity's inadequate response to it. The cases plaintiffs cite therefore support, rather than refute, Ohio State's position that plaintiffs' Title IX claims against Ohio State accrued at the time of the abuse and are barred by the statute of limitations.

### E. Fraudulent-Concealment Tolling Does Not Apply.

Plaintiffs argue that fraudulent-concealment tolling of the statute of limitations applies because "OSU's concealment, obfuscation, and fraud equitably tolls the statute." Opp. at 24. This does not provide a basis to toll the statute of limitations here.

As this Court found in its *Garrett et al.* Opinions, fraudulent concealment tolling did not apply because:

> As explained above, Plaintiffs were aware of all the elements of their cause of action by the late 1990s. That is, they knew of the injury, the identity of the perpetrator, and the perpetrator's employer. Because Plaintiffs have known for decades about the elements of their cause of action, any alleged misrepresentation or concealment by Ohio State did not prevent them from investigating or pursuing their claims.

*Garrett* Opinion at 20-21 (citations omitted).

The above reasoning is consistent with Supreme Court, Sixth Circuit, and Ohio case law holding, "[i]t is well established . . . that when a limitations period is tolled because of fraudulent concealment of facts, the tolling ceases when those facts are, or should have been, discovered by the plaintiff." *Credit Suisse Securities (USA) LLC v. Simmonds*, 566 U.S. 221, 226–27 (2012); *Lutz v. Chesapeake Appalachia, L.L.C.*, 717 F.3d 459, 475 (6th Cir. 2013) ("The right to rely upon fraudulent concealment 'never continues beyond the time that a plaintiff, by exercising reasonable diligence, should have discovered the facts at issue.") (quoting *Zemcik v. LaPine Truck Sales & Equip. Co.*, 706 N.E.2d 860, 865 (Ohio Ct. App. 1998)). As explained above, plaintiffs knew or reasonably should have known of their injuries at the time of the abuse. Hence, plaintiffs' fraudulent concealment theory fails for the same reasons their discovery rule allegations do.

The Amended Complaint's allegations of fraudulent concealment also fail for the additional reason that they are coextensive with the substantive wrongs supporting plaintiffs' Title IX claims. Fraudulent concealment requires "efforts by the defendant, above and beyond the wrongdoing upon which the plaintiff's claim is founded, to prevent, by fraud or deception, the plaintiff from suing in time." *Cheatom v. Quicken Loans*, 587 F. App'x 276, 281 (6th Cir. 2014). In addition, "[f]raudulent concealment requires a showing of affirmative concealment; mere silence or unwillingness to divulge wrongful activities is not sufficient. Instead, there must be some

16

trick or contrivance intended to exclude suspicion and prevent inquiry." *Precious Creation, Inc. v. Mercantile Bank Mortg. Co.*, LLC, 731 F. App'x 498, 501 (6th Cir. 2018); *see also Schubert v. Neyer*, 165 N.E.2d 226, 229 (Ohio Ct. App. 1959).

Here, plaintiffs' fraudulent-concealment allegations are the same allegations supporting plaintiffs' Title IX claims that Ohio State was deliberately indifferent to the abuse and failed to act. *See* Opp. at 29-30 (arguing Ohio State "failed to report the abuse to anyone"; "failed to discipline Strauss"; "failed to inform students 'of any of these facts'"; "ignor[ed], rebuff[ed], and laugh[ed] at students who raised concerns"; "promot[ed] Dr. Strauss," etc.). These allegations are insufficient to support fraudulent concealment tolling. *Precious Creation, id.*; *Schubert, id*; *see also King-White*, 803 F.3d at 764 (rejecting fraudulent-concealment tolling because the "[p]laintiff's allegations focus[ed] on" the defendants' "failure to act").

Numerous courts have refused to apply fraudulent concealment tolling to Title IX claims.[7] Given this law, it is not surprising that plaintiffs do not cite a single case in which a court has tolled the statute of limitations on a Title IX claim (or even Section 1983 claim) based on fraudulent concealment. Plaintiffs' citation to *Gilley v. Dunaway*, 572 F. App'x 303 (6th Cir. 2014) is particularly puzzling given that the Sixth Circuit in *Gilley* held: "Because Gilley has not alleged sufficient facts [to] establish a plausible claim that the Board fraudulently concealed her causes of

---

[7] *See Gilley*, 572 F. App'x at 308-309 (Board's failure to report the alleged abuse to governmental authorities did not constitute fraudulent concealment of plaintiff's Title IX claims where plaintiff was aware of facts that "should have aroused her suspicion that she was being sexually abused"); *Forrester*, 2021 WL 1812700, at *7-10 ("Fraudulent concealment is a limited doctrine, and it does not apply to this case."); *Anderson v. Fayette Cty.*, 616 F. Supp. 2d at 671 (similar); *Doe v. USC*, 2019 WL 4228371 at *5 (finding that "even if USC attempted to conceal Dr. Tyndall's improper behavior for years following Plaintiff's examination," the plaintiff's "own allegations show[ed] that she independently had reason to believe that Dr. Tyndall did not conduct the examination . . . according to accepted medical standards."); *Doe v. Pasadena Hospital*, 2020 WL 1529313, at *1, 3-4 (agreeing with Hospital's argument that "fraudulent concealment d[id] not toll Plaintiff's claims" that doctor had "misrepresent[ed] that his conduct was for a legitimate medical purpose and/or conformed to accepted medical practice" because the complaint established "actual or presumptive knowledge" of her claims); *Twersky v. Yeshiva Univ.*, 579 F. App'x 7, 11 (2d Cir. 2014) (finding fraudulent concealment tolling did not apply to Title IX claims); *King-White*, 803 F.3d at 764–65 (same); *Radin v. Albert Einstein Coll. of Med. of Yeshiva Univ.*, No. 04 CIV. 704 (RPP), 2005 WL 1214281, at *19 (S.D.N.Y. May 20, 2005) (same).

action, the limitations period for her claims is not tolled. And given that Gilley filed her claims nearly six years after the applicable limitations period had ended, her claims are time-barred." *Id*. at 309.

All of the non-Title IX cases plaintiffs cite are inapposite. In none of the cases did any of the plaintiffs allege, as plaintiffs allege here, all of the following: extensive and detailed facts affirmatively demonstrating that plaintiffs believed their abuser's conduct was abusive and/or inappropriate at the time; widespread knowledge of the abuser's inappropriate conduct; widespread contemporaneous complaints about the abuser's conduct; and that the school's response or lack thereof to such knowledge and complaints was widely known.

The Ohio Supreme Court's decision rejecting fraudulent concealment in *Doe v. Archdiocese of Cincinnati*, 849 N.E.2d 268 (2006) is instructive.[8] There, the Ohio Supreme Court held that fraudulent-concealment tolling did not apply to claims asserted in 2004 arising from abuse that occurred between 1980 and 1983. The plaintiff argued tolling should apply because it was not until 2002 that he "first learned that there were other victims" of the same church employee. *Id*. at 271, 273. In granting the motion to dismiss, the court stated:

> We hold that Doe's cause of action was not concealed from him—i.e., he knew or should have known all of the elements of potential causes of action against the archdiocese within two years after he reached majority. Doe concedes in his complaint that he at all times knew the identity of his alleged perpetrator and knew the employer of his alleged perpetrator. Thus, he had all of the facts necessary to investigate and prosecute his potential causes of action against the archdiocese.

*Id*. at 279. The same is true here, as this Court found in holding that fraudulent-concealment tolling of the statute of limitations did not apply in the *Garrett et al*. Opinions. *See Garrett* Opinion at

---

[8] Even though federal law determines accrual, where, as here, a federal cause of action borrows a state statute of limitations, coordinate tolling principles and rules (other than the discovery rule, which is determined by federal law) are governed by state law, to the extent they are not inconsistent with federal law. *See Hardin v. Straub*, 490 U.S. 536, 539 (1989)); *Dotson v. Lane*, 360 F. App'x 617, 619 n.2 (6th Cir. 2010); *Gainor v. Worthington City Schools*, No. 2:11-CV-561, 2013 WL 6587869, *7 (S.D. Ohio Dec. 13, 2013).

19-21. For the same reasons, fraudulent-concealment tolling does not apply.

## III.  **CONCLUSION.**

Given plaintiffs' detailed Amended Complaint allegations, all meant to establish the sexual abuse and harm they endured, it is not plausible for their counsel to now advise the Court that plaintiffs did not know of their own circumstances and dealings with Strauss.  As this Court found in the *Garrett et al*. Opinions: "Unfortunately, the very effect the abuse had on Plaintiffs (i. e., that it was enough to deprive them of the educational opportunities or benefits from Ohio State) was sufficient to put them on at least inquiry notice that they suffered abuse and that the abuse might not have happened but for Ohio State's deliberate indifference." *Garrett Opinion* at 19. n.7. This Court should apply its own "judicial experience and common sense" as required by *Iqbal* and *Twombly*, and hold that plaintiffs' Title IX claims are time-barred consistent with its opinions in *Garrett*, Case No. 2:18-cv-00692 (Doc. 197); *Snyder-Hill*, Case No. 2:18-cv-00736 (Doc. 158); *Ratliff*, Case No. 2:19-cv-04746 (Doc. 39); and *Nutter*, Case No. 2:19-cv-02462 (Doc. 53).  For the reasons stated above, plaintiffs' Amended Complaint (Doc. 16) should be dismissed with prejudice.

Respectfully submitted,

DAVID A. YOST
ATTORNEY GENERAL OF OHIO

By:    /s/ Michael H. Carpenter
        Michael H. Carpenter (0015733) (Trial Attorney)
        Timothy R. Bricker (0061872)
        David J. Barthel (0079307)
        CARPENTER LIPPS AND LELAND LLP
        280 Plaza, Suite 1300
        280 North High Street
        Columbus, OH 43215
        E-mail: carpenter@carpenterlipps.com
                 bricker@carpenterlipps.com
                 barthel@carpenterlipps.com

        Special Counsel for Defendant
        The Ohio State University

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing was filed electronically on October 13, 2021.  Notice was sent by operation of the Court's electronic filing system to all other counsel who have entered an appearance and any parties who have entered an appearance through counsel.  The parties may access this filing through the Court's ECF system.


/s/ Michael H. Carpenter
Trial Attorney for
Defendant The Ohio State University